# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

**JAMES EARL MERIDYTH,**

      **Movant/Defendant,**

**vs.**                                         **No. CV 05-761 LH/RHS**
                                                        **CR 00-557 LH**

**UNITED STATES OF AMERICA,**

      **Respondent/Plaintiff**

## REPORT AND RECOMMENDATION

**THIS MATTER** comes before the Court on consideration of Movant James Earl Meridyth's Amended Motion Under 28 U.S.C. § 2255, filed March 10, 2009 (docket no. 49).  An evidentiary hearing was held on October 8, 2009 and the parties filed their proposed findings of fact and conclusions of law on December 18, 2009.  (See **[Doc. Nos. 73, 74]**).  The Court now enters its Report and Recommendation having considered all of the pleadings on file in the above-captioned cause, the testimony presented at the evidentiary hearing, the arguments of counsel and being otherwise fully advised in the premises.

### *Factual and Procedural Background*

In January 2001, following a jury trial before Judge Downes, Mr. Meridyth was convicted of three counts of violating federal narcotics trafficking laws.[1]  Mr. Meridyth was represented at trial by Michael Todd.

On October 15, 2001, Mr. Meridyth's new counsel, David L. Norvell, moved to vacate sentencing and requested a psychiatric evaluation based on a letter received from psychiatrist David Landau, M.D.[2]  On December 17, 2001, Judge Conway ordered that Mr. Meridyth be evaluated for competency.  (See 00-cr-557 LH **[Cr. Doc. No. 335]**).  On August 27, 2002, Judge Conway found that Mr. Meridyth was "mentally incompetent" to proceed to sentencing and ordered that he "be committed to the custody of the Attorney General . . . for treatment and evaluation . . . ." (Order **[Cr. Doc. No. 343]**).

On March 13, 2003, following a second competency hearing, Judge Downes determined that Mr. Meridyth was competent to proceed to sentencing, and imposed sentence.  (See Clerk's Minutes of Competency Hearing[3] **[Cr. Doc. No. 345]**, Sentencing Proceedings **[Cr. Doc. No. 346]**).

---

[1] On April 13, 2004, the Tenth Circuit affirmed his conviction on direct appeal.  See United States v. Meridyth, 364 F.3d 1181 (10th Cir. 2004).  On appeal, Mr. Meridyth claimed that the trial court "abused its discretion by not declaring a mistrial after a prosecution witness testified that he had moved because he felt his life was in danger." Meridyth, 364 F.3d at 1181.

[2] Dr. Landau opined that, based on evaluations of Mr. Meridyth conducted on September 6, 2001 and October 2, 2001, "Mr. Meridyth is not competent to assist his lawyer in his defense at this time."  (Letter from Dr. Landau to Judge Conway, dated Oct. 15, 2001, attached to Motion to Vacate Sentencing Hearing, 00-Cr-557 LH **[Cr. Doc. No. 327]**).  Dr. Landau concluded that "[t]his is a tentative assessment requiring a more complete competency evaluation . . . ." (Id.).

[3] Although the Clerk's Minutes form indicates that the hearing was held before Judge Black, the transcript indicates that the hearing was held before Judge Downes.

On July 12, 2005, Mr. Meridyth filed a § 2255 motion in this Court challenging his conviction.  Counsel was appointed for Mr. Meridyth and an amended motion was filed on March 10, 2009. (See Movant James Earl Meridyth's Amended Motion under 28 U.S.C. § 2255 **[Doc. No. 49]**).  The Government filed a response **[Doc. No. 53]** and Mr. Meridyth filed a reply **[Doc. No. 56]**.

Mr. Meridyth challenges the validity of his conviction on two grounds:

*Ground I* - Mr. Meridyth was tried while incompetent (in violation of his fifth amendment right to due process); and

*Ground II* - Mr. Meridyth's trial counsel (Michael Todd) failed to investigate Mr. Meridyth's incompetence (in violation of his sixth amendment right to effective assistance of counsel).

Mr. Meridyth alleges that he and his wife notified trial counsel of their concerns re: Mr. Meridyth's mental status prior to and/or during his trial.  (See, e.g., Affidavit of Andra Meridyth,[4] Ex. A-1, attached to Petitioner's Second 'Reply' to the Government's Submitted Affidavits, Exhibits, pursuant to 28 U.S.C. § 2255 Petition to Vacate, Set Aside or Correct Sentence, filed May 22, 2006 **[Doc. No. 29]**).  Mr. Meridyth's trial counsel avers that neither Mr. Meridyth nor his wife "indicated that they wished to have [Mr. Meridyth] undergo mental health treatment or evaluation."  (Affidavit of Michael J. Todd, Esq. ¶ 5, Ex. 1, attached to United States' Response to Defendant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to Title 28 U.S.C. [§] 2255 Filed on August 15, 2005, filed Sept. 30, 2005 **[Doc. No. 9]**).

***Standard for Evaluating Ineffective Assistance of Counsel***

---

[4]Although Ms. Meridyth's affidavit is signed "under penalty of perjury" it does not appear to be notarized.

Under the now familiar two-part standard for judging ineffective assistance, [a habeas petitioner] is entitled to relief if he can show by a preponderance of the evidence the following:

> **(1)** trial counsel was deficient, i.e., "counsel's representation fell below an objective standard of reasonableness";
> and
> **(2)** the deficiency prejudiced his defense, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland v. Washington, 466 U.S. 668, 688, 694 (1984); accord Sperry v. McKune, 445 F.3d 1268, 1274-75 (10th Cir. 2006).  "There is a strong presumption that counsel's performance falls within the wide range of professional assistance[;] the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir.1997) (quoting Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)) (cited in  Boyle v. McKune, 544 F.3d 1132, 1137-38 (10th Cir. 2008) (one internal citation omitted) (emphasis added)).  The Supreme Court has declared that counsel's strategic decisions based on limited investigation

> are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland, 466 U.S. at 691.

## *Ground I - Competency claim*

In alleging that he was tried while, in fact, incompetent, Mr. Meridyth appears to assert a substantive due process competency claim rather than a procedural due process competency claim.  In a procedural competency claim, "we must determine whether a reasonable judge,

situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced *[bona fide] doubt* with respect to [the defendant's] competency to stand trial." McGregor v. Gibson, 248 F.3d 946, 953 (10th Cir. 2001) (en banc) (emphasis added).  "In contrast . . .  a petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must . . . . present evidence that creates a *real, substantial and legitimate doubt* as to his competency to stand trial." Walker v. Att'y Gen. For State of Okla., 167 F.3d 1339, 1344, 1347 (10th Cir. 1999) (quotations omitted, emphasis added); see also Allen v. Mullin, 368 F.3d 1220, 1239 (10th Cir. 2004).

The Government argues that Mr. Meridyth's competency claim is procedurally barred because he failed to raise the issue on direct appeal.  However, substantive due process competency claims are not subject to procedural bar.  See United States v. Grist, 299 Fed.Appx. 770, 776 n.3, 2008 WL 4812964, at **6 n.3 (10th Cir. Nov. 6, 2008) (not selected for publication) (citing Nguyen v. Reynolds, 131 F.3d 1340, 1346 (10th Cir. 1997)).  Thus, Mr. Meridyth's claim that he was tried while, in fact, incompetent is not procedurally barred.  Nevertheless, the Court concludes that Mr. Meridyth is not entitled to relief on his competency claim, whether it be procedural or substantive.

As noted below, Mr. Meridyth's trial counsel did not harbor any doubt regarding Mr. Meridyth's competency to stand trial.  See Bryson v. Ward, 187 F.3d 1193, 1201 (10th Cir. 1999) ("Defense counsel is often in the best position to determine whether a defendant's competency is questionable.").  Moreover, a review of the record does not reveal that a reasonable judge should have had a bona fide doubt as to [Mr. Meridyth's] competency at the time of trial.  Because the Court finds that a procedural due process competency claim falls short, Mr. Meridyth's substantive due process competency claim also fails.  See Allen v. Mullin, 368 F.3d 1220, 1240

(10th Cir. 2004); Walker, 167 F.3d at 1347.  Mr. Meridyth does not present evidence that creates a real, substantial and legitimate doubt as to his competence to stand trial.  Accordingly, Mr. Meridyth is not entitled to relief on his claim that he was tried while incompetent.

### *Ground II - Ineffective Assistance of Counsel claim*

Mr. Meridyth alleges that his trial counsel rendered ineffective assistance in failing to investigate his mental status, notify the trial court, and seek a competency hearing prior to or during trial.

### *Findings of Fact*

1.  The Court has jurisdiction over the subject matter and the parties hereto.

2.  Michael J. Todd, Esq., is an attorney licensed to practice law in the State of Texas with a specialization in criminal defense.  Mr. Todd was hired by Mr. Meridyth's family at the time of Mr. Meridyth's arrest in Las Cruces, New Mexico.

3.  Mr. Meridyth testified that Mr. Todd first met with him in the Dona Ana County Jail and Mr. Meridyth claims to have discussed his mental illness personally with Mr. Todd.  Mr. Meridyth alleges to have been "suffering from different things" and testified that Mr. Todd told Mr. Meridyth that he would worry about that later and was only concerned with bonding Mr. Meridyth out of jail.  Mr. Meridyth further claims to have told Mr. Todd that he was taking a medication (xanax), suffered from panic attacks and could not drive, all as the result of an accident in his childhood when he was kicked by a horse.  Mr. Meridyth alleges to have told Mr. Todd that he had bad memory and headaches.  Mr. Todd directly disputes these claims by Mr. Meridyth in his testimony.

4.  Mr. Meridyth testified that he drove to Dallas with his then-spouse and met with Mr. Todd in Mr. Todd's office.  Mr. Meridyth alleges that again he brought up the issue of his mental

illness and that Mr. Todd told Mr. Meridyth something to the effect that "those white folks ain't worried about no mental illness."  Mr. Todd testified that he never uttered any racial slurs or discussed Mr. Meridyth's claim of mental illness at the meeting in his Dallas office.

5.  Mr. Meridyth testified that his third meeting with Mr. Todd took place in Odessa, Texas, when Mr. Todd flew to Odessa to "look around at the angles the officer could see."  Mr. Meridyth testified that he drove  with Mr. Todd to Hobbs, New Mexico and that on the return drive Mr. Meridyth suffered a "panic attack" near Andrews, Texas, causing Mr. Meridyth to ask Mr. Todd to drive the automobile.  Mr. Meridyth further testified that Mr. Todd took over the wheel of the automobile and that Mr. Todd "tripped out" by getting excited and saying something to the effect that there "was something wrong" with Mr. Meridyth.  Mr. Todd testified that he has no specific recollection as to whether Mr. Meridyth suffered an anxiety attack during this drive or not.

6.  Upon the return to Odessa, Texas, Mr. Todd and Mr. Meridyth went to Mr. Meridyth's home which had been searched as an incident to his arrest.  They talked about the evidence and the gun that had been found in the home.  Again, Mr. Meridyth claims that he brought up the issue of a mental evaluation and that Mr. Todd stated that the "judge ain't going to hear that."  Mr. Todd clearly denies ever making such a statement.

7.  Mr. Meridyth testified that on a fourth occasion just before trial, he met with Mr. Todd in the Holiday Inn in Las Cruces, New Mexico, and again mentioned his head injury and problems to Mr. Todd.  Mr. Todd testified that he did meet with Mr. Meridyth and his spouse prior to the trial but that at no time did either of them advise Mr. Todd that Mr. Meridyth suffered from any head injury or mental difficulties.

8.  At the time Mr. Meridyth was indicted in 2000, he testified he "bought horses" and that he had had success in the business of horse ownership.  Mr. Meridyth had one horse which won the All-American Futurity which is billed as the world's richest horse race because there is a purse in excess of $1,000,000.  Mr. Meridyth acknowledges that he made money from his ownership of the horse but claimed that his wife managed the horse racing business and that he only cleaned stalls.

9.  Mr. Meridyth testified that he cannot remember what defense he raised at the time of his trial.

10.  Mr. Meridyth's defense at trial was that he was entrapped into contact with persons who were trafficking narcotics because of his romantic interest in a female undercover agent who Mr. Meridyth termed a "hoochie" with "Daisy-Do shorts."  Mr. Meridyth also presented a defense to the jury that he was a successful race horse owner and had substantial winnings and therefore had no motivation to profit by the sale of illegal drugs.

11.  On cross-examination by the Assistant United States Attorney, Mr. Meridyth could remember very little about his defense.  He did not recall much about calling a Mr. Hagan as a character witness who testified that Mr. Meridyth was a good businessman.  He could not remember what information Mr. Todd asked him to provide in his defense at trial.  For example, he could not recall hiring a retired State Police Officer to stand up and testify for him at trial nor did he recall the amount of the retainer Mr. Todd asked for when he first hired him as his attorney.  In short, Mr. Meridyth could not recall or remember much of anything about the criminal proceedings against him when asked questions on cross-examination, however, his memory was excellent on direct examination.

12.  Mr. Meridyth's sister, Stacy Meridyth, testified that Mr. Meridyth told Mr. Todd about his depression, anxiety and poor education at the meeting in Odessa as well as the meeting in Las Cruces at the Holiday Inn.  She further testified that Mr. Meridyth was "head of the family" and the "man of the house."  She also testified that at the meeting at the Holiday Inn in Las Cruces, Mr. Meridyth was "somewhat" helpful to Mr. Todd in discussing his defense and that Mr. Todd went over the witnesses who would be called in the defense's case-in-chief.

13.  Attorney Michael Todd has been practicing criminal defense law since 1990 in Dallas, Texas.  Initially Mr. Meridyth had a court-appointed attorney who represented him at the detention hearing.  Mr. Todd was contacted to file an appeal of the detention decision by the Court.  He interviewed family members with the idea of obtaining a third-party custodian and for obtaining names of persons who would testify on Mr. Meridyth's behalf.  In his first meetings with Mr. Meridyth, Mr. Meridyth asked about the penalties which might be imposed as well as the legal steps Mr. Todd intended to take.  He showed no signs of mental illness, instability, or lack of rationality.

14.  Prior to the trial, Mr. Todd met with Mr. Meridyth on four or five occasions.  In the meeting in Dallas, Texas, Mr. Meridyth and his wife went over the discovery provided by the United States as well as the facts of the case.  Mr. Meridyth was given a copy of the materials obtained from the government and these materials were explained to him by Mr. Todd.  Mr. Todd testified that Mr. Meridyth had the attitude that he had done nothing wrong.  Mr. Meridyth answered all of Mr. Todd's questions appropriately and Mr. Todd observed no indication of instability, mental illness or irrational behavior.  Mr. Todd testified that at no time did Mr. Meridyth even mention suffering from a mental illness or injury as the result of being kicked by a horse.

-9-

15.   At the meeting with Mr. Meridyth in Odessa, Texas, Mr. Todd testified that they drove around to look at the locations of the alleged criminal activity.  Mr. Meridyth was driving the vehicle and they were trying to see the different views and vantage points arresting officers may have used for observation.  Mr. Todd testified that all of Mr. Meridyth's questions were answered and that the questions were appropriate in context.  Mr. Todd had no independent recollection that there was any panic attack by Mr. Meridyth during the course of this automobile trip, but did indicate that it may have happened, he just could not remember.  Mr. Todd testified that Mr. Meridyth never discussed a motion for competency examination nor did he talk to Mr. Todd about his head injury or alleged mental illness.  Mr. Todd believed that Mr. Meridyth had a "prevailing sense of denial" concerning the charges.

16.   Mr. Todd testified that Mr. Meridyth actively participated in the defense of his case by talking with Mr. Todd, listening to various tapes, going over reports and giving information on what might be helpful to the defense.

17.   Mr. Todd testified that Mr. Meridyth had no difficulty understanding the pretrial proceedings and that when they were reviewing and discussing an audio tape of a telephone call, Mrs. Meridyth believed that it was Mr. Meridyth's voice on the tape, a fact which Mr. Meridyth denied.

18.   At the trial in January, 2001, Mr. Todd met with the Defendant at the Holiday Inn prior to and during the trial.  Mr. Meridyth and his family were staying at the Holiday Inn during the course of the trial.  Again, Mr. Todd testified that the Defendant did not ask for any mental evaluation nor did he raise any concerns or indications that he was mentally incompetent.  Mr. Todd was with Mr. Meridyth for a minimum of 8 hours per day during the course of the trial and may have been with him longer prior to trial starting or the day's proceedings ending.  Mr.

-10-

Meridyth never told Mr. Todd that he had a mental illness or was confused.  Mr. Todd had no concern about Mr. Meridyth's ability to participate in his defense.  Mr. Meridyth took notes during the course of the trial and gave feedback about witnesses, especially the testimony of Mr. Meridyth's brother.  Mr. Meridyth's wife made the conscious decision not to testify at the trial and therefore the defense called the family attorney from Odessa to testify.

19.  After the verdict of guilty was received, Mr. Todd met with Mr. Meridyth the following day.  Mr. Meridyth was "mortified" at the guilty verdict but understood what he and Mr. Todd were talking about.

20.  Mr. Todd testified that he would have gotten an independent mental evaluation if he had any concerns whatsoever about Mr. Meridyth's mental or emotional capacity.

21.  After the verdict was received by the jury, Mr. Todd testified that the family's sole concern was whether Mr. Meridyth's brother James had lied during the course of the trial and that at no time did Mr. Meridyth or his family raise the issue of mental incapacity or incompetency.

22.  The Court finds that Mr. Meridyth's testimony at the evidentiary hearing on October 8, 2009, is not credible.

23.  The Court finds that Mr. Todd's testimony at the October 8, 2009 evidentiary hearing is credible and supported by the record as a whole.

*Conclusions of Law*

1.  The Court has jurisdiction of the matter and parties hereto.

2.  Mr. Meridyth has not shown by a preponderance of evidence that Mr. Todd's representation was deficient and that the deficiency prejudiced Mr. Meridyth's defense.

-11-

3.  Mr. Meridyth has not carried his burden of proving that Mr. Todd's representation was unreasonable under prevailing professional norms and that any of Mr. Todd's professional action was not sound defense strategy.

### *Conclusion and Recommendation*

The Court concludes that Mr. Meridyth is not entitled to relief based on any of the grounds raised in his § 2255 motion.  According, the Court recommends that Mr. Meridyth's Amended Motion Under 28 U.S.C. § 2255 (docket no. 49) be denied and this civil proceeding be dismissed with prejudice.

Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.


_Robert Hayes Scott_
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE