IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

  -vs-                                              CRIMINAL No. 00-557 LH

JAMES EARL MERIDYTH,

      Defendant.

**MEMORANDUM OPINION**

      **THIS MATTER** comes before the Court on Defendant's *pro se* Motion to Reduce Sentence, deemed filed on July 28, 2011. *See* Order (ECF No. 478), filed Dec. 2, 2011. Having considered the Motion, the memoranda submitted by counsel for the government and for Mr. Meridyth and by the United States Probation Department, the record in this case, and the relevant law, and otherwise being fully advised, the Court finds that the Motion is well taken in part and it will be **granted in part** by a contemporaneously entered Order.

      On January 25, 2001, a jury found Defendant James Earl Meridyth guilty of conspiracy to possess with intent to distribute more than 50 grams of cocaine base ("crack cocaine") (Count I of the Superseding Indictment (ECF No. 107), filed Sept. 21, 2000), possession with intent to distribute more than 50 grams of cocaine base (Count V), and possession with intent to distribute less than 500 grams of a mixture containing cocaine (Count VI). Verdict (ECF No. 214), filed Jan. 25, 2001. At

1

the sentencing hearing on March 13, 2003, the Court found that Defendant's total offense level was thirty-eight and his criminal history category V, resulting in a guideline imprisonment range of 360 months to life for the cocaine base convictions in Counts I and V. Given the statutory maximum sentence of 20 years for Count VI, the guideline imprisonment range for the cocaine charge was 240 months. The Court sentenced Defendant to 360 months for each of the crack cocaine convictions and 240 months for the cocaine conviction, with the sentences to be served concurrently.

Defendant did not request resentencing under the initial retroactive amendments to the crack cocaine sentencing guidelines. He does so now, however, pursuant to the more recent amendment. Applying both amendments to the cocaine base guidelines, Defendant's total offense level now is 34, which combined with a criminal history category of V results in a guideline imprisonment range of 235 to 293 months for Counts I and V and a range of 235 to 240 months imprisonment for Count VI.

As a general matter, federal courts do not have authority to "'modify a term of imprisonment once it has been imposed.'" *Freeman v. United States*, ___ U.S. ___, 131 S. Ct. 2685, 2690 (2011) (plurality opinion) (quoting 18 U.S.C. § 3582(c)). Section 3582 further provides, however, that a court may modify a term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(2). In 2007, the United States Sentencing Commission amended the guidelines to reduce the offense level for possession of cocaine base by two levels and directed that the amendment be applied retroactively. *See, e.g., United States v. Lucero*, 713 F.3d 1024, 1025 (10th Cir. 2013). The Commission again lowered the guidelines

provisions pertaining to crack cocaine on November 1, 2011, retroactively implementing the Fair Sentencing Act. *See, e.g., United States v. Wilkerson*, 485 F. App'x 318, 320 (10th Cir. 2012).

The court "may reduce a defendant's sentence if, after considering the applicable factors in 18 U.S.C. § 3553(a), 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States. v. Price*, 486 F. App'x. 727, 731 (10th Cir. 2012) (quoting 18 U.S.C. § 3582(c)(2)).  The statutory factors to be considered include "the nature and circumstances of the offense and the history and characteristics of the defendant," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, . . . to afford adequate deterrence," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).  Additionally, "the relevant Sentencing Commission policy statement instructs the court to consider 'the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment.'" *United States v. Lindsey*, 527 F. App'x 700, 703 (10th Cir. 2013) (quoting U.S.S.G. § 1B1.10, cmt. n.1(B)(ii)).  The court also "'may consider' the defendant's post-sentencing conduct." *United States v. Osborn*, 679 F.3d 1193, 1195 (10th Cir. 2012) (quoting U.S.S.G. § 1B1.1.0, cmt. n.1(B)).

While agreeing that the amended guidelines apply to Defendant, making him eligible for a sentence reduction, the United States maintains that the Court should decline to reduce his sentence. It first argues that Mr. Meridyth's extensive criminal history, which includes criminal convictions for the three serious drug trafficking crimes at issue here and prior convictions for burglary, assault, and fleeing a police officer, shows that he is a danger to the community.  The government additionally cites Defendant's history of contacts with law enforcement that did not result in

3

convictions, including arrests for assault, stabbing, felon in possession of a firearm, a drive-by shooting involving an Uzi-type machine gun, and allegations he was involved in a scheme trading federal food coupons for cash, cocaine, and firearms.

The United States additionally contends that reducing Defendant's sentence would result in unwarranted sentencing disparities with two of his codefendants, Daryl Wayne Wilkerson and Edward James Oliver, both of whom it describes as having worked as runners for Mr. Meridyth and, arguably, were far less culpable than he.[1]  Finally, the government cites to a number of cases in which courts denied defendants reductions in their sentences for reasons including the nature of their original criminal conduct, previous criminal conduct, and post-sentencing behavior while incarcerated.

In his response, Mr. Meridyth first maintains that his sentence should be reduced to redress the unfair disparity between crack cocaine and powder cocaine sentences, which now has been corrected by Congress and the Sentencing Commission.  He also contrasts his efforts toward self-improvement during his incarceration[2] to the behavior of the "violent and dangerous prisoners" in the cases cited by the government.  Defendant further claims that his offense conduct was non-violent, again in contrast to the "very violent offense conduct" involved in the cases relied upon by

---

1   Mr. Wilkerson was sentenced as a career offender to 360 months imprisonment and is ineligible for any reduction under the amended crack guidelines.  *See Wilkerson*, 485 F. App'x 318.  Mr. Oliver was sentenced to 228 months imprisonment, pursuant to a FED. R. CRIM. P. 11(c)(1)(C) plea agreement, and also is ineligible for any sentence reduction.  *See* Mem. Op. and Order (ECF No. 519), filed Feb. 27, 2013; Order (ECF No. 530-1), filed Aug. 29, 2013 (dismissing appeal, per voluntary withdrawal by defendant).

2   In 2008, Mr. Meridyth earned certificates for completion of a welding qualification test, outstanding performance as a football coach, and completion of a stress management program and in 2010 he completed a course to obtain a commercial driver's license.  Defendant subsequently supplemented the record regarding his post-sentencing efforts toward self-improvement with copies of certificates earned in 2013 for completion of Basic Business Math, Networking for Success, and Political Science; participation in yoga class, and completion of Anger Management, Coping with Anger Management, and Thinking for Good: Changing Antisocial and Criminal Thinking workbooks.  Letter (ECF 531), filed Aug. 29, 2013.  The October 28, 2013, Second Updated Memorandum provided by the United States Probation Department indicates that Defendant also completed the following programs and classes: Land Management Tech

the government.[3] He challenges the government's contention that he is a danger to the community, saying it is based on faulty information; specifically, he asserts that he was not arrested for assault, stabbing, a drive-by shooting, and trading food stamps. He contends that "decades-old" matters should not warrant a significantly longer sentence than that currently called for under the guideline amendments and that they do not outweigh his recent and on-going self-improvement efforts and his current conduct in prison.[4] Finally, he maintains that a reduction in his sentence, as provided by the amended guidelines, would not create any unwarranted sentencing disparity between him and his codefendants, both of whom are career offenders.[5]

The Court agrees that Defendant is eligible for a sentencing reduction under the amendments to the crack sentencing guidelines. It does not agree, however, that he should receive a full reduction in sentence as he proposes or no reduction as advocated by the United States.

As an initial matter, the Court does not credit Defendant's argument that his sentence must be reduced to ameliorate the unwarranted and unjust disparity between powder and crack cocaine sentences. While it is true that both the Sentencing Guideline Commission and Congress have

---

Explore in July 2004 and Positive Voices, May 30, 2013, through October 24, 2013.

3   Defendant argues that his case is not comparable those cited by the United States, in that he did not engage in sexual misconduct in prison and has not incited prison riots or presented a serious hazard to prison security. He also distinguishes the facts of his case in that his offense conduct was non-violent and his criminal history points were not "near-record," and he was sentenced to concurrent, not consecutive, sentences at the low end of his guideline range, not the high end.

4   Defendant insists that his conduct in prison contains "a small number of minor infractions . . . clustered in time near his arrival . . . in 2003." He also points to the "relatively positive review" of his conduct by prison officials, apparently referring to his caseworker's description of his conduct in prison as "relatively decent," Probation Mem., Oct. 26, 2011, at 5.

5   As noted *supra* note 1, Mr. Oliver was sentenced pursuant to a Fed. R. Crim. P. 11(c)(1)(C) agreement. Although the parties and the Court originally believed he was a career offender, during proceedings on his Motion for Modification or Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) (Guideline Amendment No. 750) it was determined that he in fact was not and never had been a career offender. While his two prior felony convictions for simple possession of narcotics did not qualify for purposes of establishing career offender status, they were, however, predicate offenses for

addressed this disparity subsequent to Mr. Meridyth's original sentencing, it is beyond debate that the Court must follow the statutory and guideline requirements applicable to any retroactive resentencing.

The Court also questions Defendant's assertion that the government's position that he is a danger to the community is based on faulty information. Specifically, he argues he was not "arrested" for assault, stabbing, a drive-by shooting, and trading food stamps. As detailed in the Presentence Report, Mr. Meridyth's criminal history includes prior convictions for 1) Minor in Possession of Alcohol While Operating a Motor Vehicle and Possession of Marijuana (arrested March 15, 1985); 2) Noises Expressly Prohibited (arrested August 20, 1988); 3) Burglary with Habitual Offender Enhancement (arrested February 16, 1988); 4) Possession of Marijuana (arrested July 13, 1989); 5) Assault (arrested April 28, 1992); 6) three separate counts of Theft, two of which were combined (arrested September 4 and October 10, 1992); 7) Resisting, Evading, or Obstructing a Police Officer (arrested September 19, 1992); 8) four counts of Unlawful Dealing in Food Coupons for cash, Possession of Drug Paraphernalia and Attempted Felon in Possession of a Firearm (arrested October 17, 1994); and 9) Fleeing Police Officer (arrested April 1, 1999). Defendant's conviction for Noises Expressly Prohibited also included the charge of Battery Upon a Peace Officer, as he struggled during the arrest and bit the officer in the arm. His Burglary with Habitual Offender arrest and conviction also included charges of Commercial Burglary, Concealing Self on Private Property, and Contributing to the Delinquency of a Minor. Finally, during his arrest for the Resisting, Evading, or Obstructing a Police Officer conviction, Defendant was combative and stuck officers.

---

sentencing enhancements under 21 U.S.C. § 841(b)(1)(A), thereby exposing Mr. Oliver to the possibility of a mandatory life sentence. *See* Mem. Op. and Order (ECF No. 519).

The Court further notes the Defendant's criminal history included in the Presentence Report that did not result in convictions: 1) a 1989 incident in which Defendant and two other men repeatedly struck a man over the head and shoulders with chains; 2) a 1991 stabbing by the Defendant of an individual in the abdomen and the shoulder; 3) Defendant's arrest in July 1992 for Seat Belts and Felon in Possession of a Firearm, a Titan .25 caliber pistol, charges to which the District Attorney entered a Nolle Prosequi due to Defendant's Motion to Suppress Evidence; 4) a report by an individual to a police officer in September 1992 that Defendant fired several rounds from an Uzi-type machine gun at him, officers subsequently located five spent rounds and holes in the night club building, but the victim indicated he did not want to prosecute due to possible retaliation by Defendant; and 5) in December 1993, Defendant was indicted on six counts of Unlawful Dealing in Federal Food Coupons, two counts of Conspiracy to Commit Unlawful Dealing in Federal Food Coupons, Trafficking in a Controlled Substance (cocaine), and Felon in Possession of a Firearm; the Indictment was quashed for not having been delivered in adequate time; police reports indicate that Defendant traded Federal Food Coupons for cash, cocaine, and guns.

While Defendant discounts the import of his criminal past, asserting that conduct more than two decades old does not outweigh his recent and on-going self-improvement efforts and his current conduct in prison, the Court is not convinced that this past conduct is less relevant because of its age. The criminal drug conspiracy for which Defendant now is imprisoned began on June 1, 1996. It is clear that Defendant basically engaged in a pattern of criminal conduct for his entire adult life - up until his arrest in this case in April 2000. Additionally, while his current convictions arguably may not constitute crimes of violence, Defendant's criminal history includes more than a few violent acts.

7

Defendant also has committed a number disciplinary infractions since his incarceration with the Bureau of Prisons ("BOP") in mid-2003, several of them involving violence: 1) Refusing to Obey an Order in November and December 2003, 2) Assault without Serious Injury in January 2004, 3) Being in an Unauthorized Area in September 2004, and 4) two instances of Fighting with Another Person in June 2011 and March 2012. While his BOP Case Manager in 2011 described Defendant's behavior as "relatively decent," his current Case Manager reports that he has been discipline free since March 1, 2012, and has "good rapport with staff and inmates." Additionally, the Case Manager reports that Defendant is working closely with psychology services regarding his medication and self-improvement programming. He also has more than five years of work experience in the UNICOR Factory and has begun formulating his release plan. Clearly, while Mr. Meridyth's pre- and post-sentencing behavior may not rise to the level of criminal conduct and violence exhibited by many of the defendants in the cases cited by the government, it is of major concern to the Court and heavily influences its determination of any reduction in his sentence.

Finally, the Court is not convinced by either parties' argument regarding possible sentencing disparities between Mr. Meridyth and Codefendants Wilkerson and Oliver. While it is true that neither of his codefendants qualifies for resentencing, as Wilkerson was a career offender and Oliver was sentenced pursuant to a Rule 11(c)(1)(C) agreement, Mr. Meridyth's attempts to distinguish his behavior from theirs in this case is questionable. Defendant notes that Oliver was described as "heavily" involved in cocaine distribution and that Wilkerson boasted that he could supply any amount of crack cocaine and was described as "a major player in the organization." What Mr. Meridyth fails to acknowledge, however, is that he was found to be a leader or organizer of the criminal activity, which involved a conspiracy of more than five persons. Sentencing Tr. 67:12-16

8

(ECF NO. 425-4), filed *ex parte* Aug. 6, 2008 (Sealed United States' Correction/Supplement to United States Resp. to Def.'s Mot. to Vacate, Set Aside or Correct Sentence, Ex. 5). The Court is similarly unconvinced, however, by the government's description of Wilkerson and Oliver as merely runners in the criminal organization.

Regardless, "disparity among codefendants is not a consideration required by § 3553(a)." *United States v. Rojas*, 531 F.3d 1203, 1210 (10th Cir 2008) (citing *United States v. Verdin-Garcia*, 516 F.3d 884, 899 (10th Cir.2008)) Rather, "§ 3553(a)(6) requires a judge to take into account only disparities *nationwide* among defendants with similar records and Guideline calculations." *Verdin-Garcia*, 516 F.3d at 899 (citing *United States v. Davis*, 437 F.3d 989, 997 (10th Cir.2006); *United States v. Gallegos*, 129 F.3d 1140, 1143 (10th Cir.1997)). Thus, "[a]lthough it is not improper to consider co-defendant disparity, neither is it mandated." *Rojas*, 531 F.3d at 1210 (citing *United States v. Smart*, 518 F.3d 800, 804 (10th Cir.2008)). Furthermore, "'disparate sentences are allowed where the disparity is explicable by the facts on the record,'" *United States v. Zapata*, 546 F.3d 1179, 1194 (10th Cir. 2008) (quoting *Davis*, 437 F.3d at 997), such as "'when sentences are dissimilar because of a plea bargain,'" *id.* (quoting *Gallegos*, 129 F.3d at 1144)).

Here, any disparity in sentences among the codefendants is explained by the record. While Wilkerson was convicted by a jury of aiding and abetting the possession with intent to distribute five grams or more of a substance containing cocaine base, his prior felony convictions for cocaine trafficking and voluntary manslaughter qualified him as a career offender. *Wilkerson*, 484 F. App'x at 320, 323. Although his original base offense level was 30 and the criminal history category V, application of the career offender guidelines resulted in an offense level of 37 and criminal history category VI, with a sentencing guideline range of 360 months to life. *Id.* at 320. The sentencing

transcript reveals the Court's "concern that Wilkerson had killed his wife and trafficked in drugs in the past," but it sentenced him at the low end of the guideline range to 360 months imprisonment, with no departure or variance. *Id.* at 323.

Codefendant Oliver, on the other hand, while erroneously believed to have been a career offender, but also facing the possibility of a statutorily mandated life sentence, pleaded guilty to a two-count Second Superseding Indictment charging conspiracy to possess with intent to distribute more than 50 grams of cocaine base and possession with intent to distribute more than 50 grams of cocaine base. The Court sentenced him to 228 months imprisonment on each count, to run concurrently, as provided by the Rule 11(c)(1)(C) agreement.

Having considered the record in this matter, including Defendant's criminal history and characteristics and his behavior in prison, along with the need for any sentence to promote respect for the law, provide adequate deterrence, and protect the public from further crimes of the Defendant, the Court finds that a full reduction in Mr. Meridyth's sentence would be inappropriate. On the other hand, the Court also finds that the circumstances of Defendant's case do not rise to the level of those relied upon by the government, such that no reduction in sentence should be granted. Accordingly, the Court finds that a partial sentence reduction of Defendant's sentence is appropriate and Defendant's sentence will be reduced to 300 months imprisonment by a contemporaneously entered Order.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**